IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY MCDONALD,                    ) No. C 05-1698 CW (PR)
                                     )
            Petitioner,              ) ORDER DENYING PETITION FOR A
                                     ) WRIT OF HABEAS CORPUS
      v.                             )
                                     )
ROSANNE CAMPBELL,                    )
                                     )
            Respondent.              )
_____     )

INTRODUCTION

Petitioner Jeffrey McDonald is a state prisoner incarcerated at Mule Creek State Prison.  On April 25, 2005, he filed his original pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a conviction and sentence imposed by the Contra Costa County Superior Court.

On January 24, 2006, the Court ordered Respondent to show cause why the petition should not be granted.  Respondent filed an answer to the petition and a memorandum of points and authorities and exhibits in support thereof on July 14, 2006.  Petitioner has not filed a traverse to the Respondent's answer.

Having reviewed the papers filed by the parties, the Court hereby DENIES the petition on all claims.

PROCEDURAL HISTORY

On September 30, 1996, a jury found Petitioner guilty of conspiracy to commit rape, sodomy, oral copulation, and penetration by a foreign object (Cal. Penal Code § 182.1), one count of rape by force (Cal. Penal Code § 261(a)(2)), one count of rape in concert (Cal. Penal Code § 264.1), one count of sodomy (Cal. Penal Code § 286(c)), one count of sodomy in concert (Cal. Penal Code

§ 286(d)), four counts of forcible oral copulation (Cal. Penal Code § 288a(c)), four counts of oral copulation in concert (Cal. Penal Code § 288a(d), one count of forcible copulation with a foreign object (Cal. Penal Code § 289(a)), one count of forcible penetration by foreign object in concert (Cal. Penal Code § 264.1), one count of conspiracy to commit murder and to obstruct justice (Cal. Penal Code § 192.1), and one count of attempted murder (Cal. Penal Code §§ 187 and 664), with enhancements for personal use of a deadly weapon and infliction of great bodily injury (Cal. Penal Code §§ 12022(b) and 12022.7(a)).  The preceding crimes were all committed against victim Jane Doe.  In addition, Petitioner was convicted of unlawful intercourse with a minor (Cal. Penal Code § 261.5(c) and oral copulation with a minor (Cal. Penal Code § 288a(b)(1)), both committed against his co-defendant, Jammie McLean.  On July 17, 2008, in California Superior Court, Contra Costa County, Petitioner was sentenced to thirty-six years to life in state prison.  On June 27, 1998, Petitioner timely appealed his conviction.  On October 12, 1999, the California Court of Appeal, First Appellate District, affirmed the judgement, and reversed the convictions of forcible rape, sodomy, oral copulation, and forcible penetration by means of a foreign object, stating that they were lesser included offenses of the "in concert" versions of those same offenses.  The court also remanded the matter to the trial court with directions to strike the conviction of conspiracy to commit attempted murder and substitute in its place conviction of conspiracy to obstruct justice.  On November 24, 1999, Petitioner sought review in the California Supreme Court.  On January 13, 2000, the California Supreme Court denied the petition.

On March 30, 2001, Petitioner filed a state habeas petition in

the superior court.  Petitioner asked the court to stay the proceedings so that he could complete his investigation relating to his ineffective assistance of trial counsel claim.  On April 27, 2001, the superior court denied both the petition and the request for a stay.

On November 26, 2002, Petitioner filed a second petition with the superior court.  This petition was denied on December 20, 2002.  In its denial, the superior court stated that Petitioner had failed to provide the court with an adequate record for the purpose of reviewing his claim of the ineffectiveness of counsel.

On February 4, 2004, Petitioner filed a petition for a writ of habeas corpus with the California Court of Appeal.  On February 11, 2004, the court summarily denied the petition.

On May 13, 2004, Petitioner filed a petition for a writ of habeas corpus with the state supreme court.  On April 13, 2005, the court summarily denied the petition.

On April 25, 2005 this Court received Petitioner's first pro se petition for a writ of habeas corpus, filed as <u>McDonald v. Campbell</u>, C 05-1698 CW, and raising the same claims previously denied by the state supreme court and the court of appeal.  On May 2, 2005, this Court received a second habeas petition from this Petitioner.  This petition was filed as <u>McDonald v. Campbell</u>, C 05-1801 CW.  The Court determined that the May 2, 2005 petition was erroneously filed as a second petition and should have been filed as an amended petition in C 05-1698.  On January 19, 2006, the Court ordered the Clerk to revoke the filing in C 05-1801, file the C 05-1801 petition as an amended petition in 05-1698, file all future filings in C 05-1698, and ordered Respondent to show cause why a writ of habeas corpus should not be issued.

**United States District Court**
For the Northern District of California

After receiving two extensions of time, Respondent filed an answer on July 14, 2006.  Petitioner did not file a traverse, but instead filed a motion for appointment of counsel and a motion for extension of time to file a traverse.  In an order dated March 13, 2007, this Court denied Petitioner's request for appointment of counsel and granted him an extension of time to file his traverse.  Again, Petition did not file a traverse.  Instead he filed a motion for reconsideration of the Court's denial of his request for appointment of counsel and a motion to stay the proceedings.  On December 10, 2007, this Court issued an Order denying both motions, but noting that if the Court determined that the claims had merit it would consider appointing counsel to file a traverse, on its own motion.

STATEMENT OF FACTS

The California Court of Appeal summarized the factual background as follows:

> Codefendant McLean and Jane Doe met in early 1996 at the Loveridge Terrace Apartments in Pittsburg.  Doe was living there with Lenae and Kenneth Klein; 17-year-old McLean was living with the appellant, who was 29. According to Doe, she and McLean hung out together a few times in appellant's apartment and "smoked weed." McLean also told Doe that she was bisexual.  McLean said that if she didn't find someone to have sex with her and appellant, he would "kick her out."  Doe responded that she was "not like that" and "into guys," but could still be McLean's friend.
>
> On the evening of February 25, 1996, McLean came to Klein's apartment several times looking for Doe, but she was out.  Doe finally got home around midnight. Eventually, after Doe had a temper tantrum and McLean gave Kenneth Klein some "weed," he agreed to let Doe stay overnight with McLean.  McLean told Klein that her boyfriend wasn't going to be home that night.
>
> But when McLean and Doe arrived at the apartment, appellant was there.  He went out to buy some food. McLean and Doe went to the back bedroom, where they lay on the bed and smoked a joint.  McLean showed Doe a

4

picture of two women in a "porno" magazine. Appellant
came into the room and McLean showed him the magazine.
He laughed and left the room.

McLean said she wanted to have sex with her and
appellant. Doe said she wanted to go home. McLean
replied, "No, we're going to have sex. You have to do
this." When Doe said she was not "like that," McLean
said, "Well, it's going to happen anyway." Then
appellant came into the room, "a rage on his face," and
ordered the two girls to undress. After appellant hit
Doe in the face and threatened that he had a gun in the
closet, she complied. Appellant took off his pants. He
was not wearing underwear and had no pubic hair.

Appellant threw Doe on the bed. He hit her and forced
her to lick McLean's vaginal area; he also ordered
McLean to lick Doe's vaginal area while he watched.
After having McLean demonstrate how to orally copulate
him, he pushed Doe's head down and made her perform the
same act on him. He also licked Doe's vagina, put his
penis in her vagina and her "butt" many times, put his
finger in her vagina, fondled her breasts, and touched
her "everywhere." During the sexual assaults, when Doe
wasn't doing something right, appellant hit her twice
with his fist and once with a bottle. He also had
intercourse with McLean at least twice while Doe was
lying next to them.

Eventually appellant told Doe to go into the bathroom
and wash herself. After she finished, appellant told
McLean to wash her again, and McLean washed Doe's vagina
with her finger. Doe got dressed and headed for the
door, but appellant and McLean both said that she wasn't
going anywhere because she would tell. They ordered her
back into the bedroom. McLean sat behind Doe, pulled
her hair back, and tried to put a pillow over her face
and stab her in the neck with a steak knife. Doe
struggled and tried to take the knife. Appellant came
into the room and stabbed Doe in the neck.

Doe found herself on the floor. Both appellant and
McLean were stabbing at her chest and neck, saying,
"Take turns. It's [your] turn to stab her." Doe
screamed and struggled, but they kept stabbing her. At
some point, Doe pretended she was dead, and appellant
said, "She's dead." She heard appellant tell McLean to
get a bucket. They wrapped her in a yellow sheet or
blanket. Appellant put her over his shoulder and
carried her out of the apartment, followed by McLean.
He dumped her over a fence into a field.

Doe did not clearly recall everything that happened
thereafter. She found herself in the field at dawn.
Believing that appellant and McLean were still after

her, she began to run.  She asked for help from a man in a nearby parking lot, telling him that "a black guy and a Mexican girl" were trying to kill her.

After the police and paramedics responded to the man's 911 call, Doe was taken to a hospital emergency room. The examining physician described her as very agitated, angry, and confused.  She had blood all over her shirt, face, neck, arms, and hands.  She had a moderately deep, gaping wound, two to three inches long, on the left side of her neck, which required 24 sutures to close.  Had the wound been half an inch deeper, it would have cut the jugular vein or the carotid artery.  Near that wound was another of similar depth, about an inch long, which required about six sutures.  Doe also had about six superficial lacerations on the right side of her face and neck, bruising on her face, and several superficial abrasions and lacerations on her right hand.

The physicians also performed a sexual assault examination.  He found no physical evidence of trauma to her vagina or anus, but did not consider that finding unusual; most sexual assaults do not leave evidence of trauma in the genitalia.  He also found no sperm on her external genitalia, which was consistent with her having bathed.

Police officers went to appellant's apartment.  On their way, one of the officers noticed appellant, dressed in a black parka-style coat, walking toward the garage area of the complex.  The officers found McLean alone in the apartment.  They noticed red stains on the bedroom carpet, which was wet and soapy, as if recently scrubbed.  They also noticed a fresh cut on McLean's hand; she explained that she cut her hand at the liquor store.  Appellant arrived and excitedly asked what was happening.  He said that he was McLean's guardian and that he had been away from home since 8 p.m. the previous night.

On the morning of the 26th, Pittsburg Detective Eric Solzman interviewed appellant at the police station; a videotape of that interview was played for the jury. Appellant told Solzman that he had spent the night with a prostitute in Oakland and San Francisco; when she drove him home in the morning, the police were at his apartment.  Appellant said that McLean was "slow," could barely read, and didn't know how to handle other people. He said that "none of this would have happened" if he had stayed at home.  That evening, police conducted a sexual assault examination on appellant, who was not wearing underwear and who had no pubic hair.

Solzman also interviewed McLean that day, and a videotape of her interview was played for the jury.

McLean gave Solzman several different versions of the preceding night's events, but consistently insisted that appellant had not been present. At first she claimed she knew nothing about what happened to Doe. Later, she said that she had hurt Doe in a fight that Doe started. She said that a Mexican named Martinez was also there; he had sex with Doe, stabbed her, and threw her over the fence. In yet another version, she said she stabbed Doe herself during the fight, and some guy named Mark helped her throw Doe over the fence. Appellant had nothing to do with it.

Police found a white sheet and a gold blanket in the field that bordered the apartment complex. Blood stains on the white sheet were consistent with McLean's DNA. A blood stain on the gold blanket was consistent with Doe's DNA and had trace amounts consistent with that of appellant. Blood stains on a sheet recovered from the apartment were consistent with McLean's DNA and had trace amounts consistent with that of appellant. Blood stains on the comforter found in the apartment were consistent with appellant's DNA and had trace amounts consistent with that of McLean.

Appellant's defense was that Doe's testimony about the sexual assaults was not credible, that he was elsewhere when the attack occurred, and that he could not have carried Doe or performed other acts described by her because of his physical disability. Among his witnesses was Patrick Taylor, M.D., a neurosurgeon, who testified that he had performed two surgeries on appellant for complications resulting from a work-related neck injury. According to Dr. Taylor, appellant's injury caused him to be weak in his upper left extremity, particularly his hand. Based on Dr. Taylor's observations of appellant in a clinical situation, the physician thought that appellant could not have lifted a 100-pound girl over his head and thrown her over a six-foot fence by himself.

McLean's defense counsel urged that she had acted under duress and was herself also appellant's victim. Among other evidence, the defense presented the testimony of psychologist Theresa Schuman, who described McLean's limited intelligence and troubled background, and who expressed the opinion that she was afraid of appellant and believed he would kill her if she did not participate in the attack on Doe. The psychologist's opinion was based in part on what McLean had told her about the event. But when McLean testified in her own defense, she claimed that she acted in self-defense and that appellant was not present.

People v. McDonald, A083693 (Oct. 9, 1999).

7

STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." William v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the [Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the relevant state court decision.  Id. at 412.

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest

8

state court to address the merits of a petitioner's claim in a reasoned decision. <u>Lajoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th Cir. 2000). It also looks to any lower court decision examined or adopted by the highest state court to address the merits. <u>See Williams v. Rhoades</u>, 354 F.3d 1101, 1106 (9th Cir. 2004) (because state appellate court examined and adopted some of the trial court's reasoning, the trial court's ruling is also relevant).

Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. <u>See Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003); <u>Greene v. Lambert</u>, 288 F.3d 1081, 1088 (9th Cir. 2002). When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an unreasonable application of clearly established federal law. <u>Himes</u>, 336 F.3d at 853; <u>accord Lambert v. Blodgett</u>, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

If constitutional error is found, habeas relief is warranted only if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993)).

DISCUSSION

Petitioner raises three claims for relief, all of which have been exhausted for the purpose of federal habeas corpus review: (1) ineffective assistance of counsel, (2) instructional error, and

United States District Court
For the Northern District of California

(3) trial court error in failing to answer a juror's questions.

I.    Petitioner's Ineffectiveness of Counsel Claims

    A. Background

Petitioner raises his ineffectiveness of counsel claim based on: (1) failure to request an instruction on attempted second degree murder; (2) failure to request a modified accomplice instruction; (3) failure to object to the trial court's instruction on voluntary intoxication; (4) failure to request that the court inquire about the questions raised by a juror after deliberations began; (5) failure to investigate and present psychological defenses to the charges; and (6) ineffectiveness of appellate counsel in not contending on appeal that: the trial court had a <u>sua</u> <u>sponte</u> duty to instruct on attempted second degree murder, the trial court's instructions regarding voluntary intoxication were erroneous, and the trial court judge failed to answer a juror's question after deliberations began.

Because Petitioner raised his ineffectiveness of counsel claim for the first time on state habeas review, where it was summarily denied without citation or comment, the Court reviews it under the standard set forth in <u>Himes</u>.

    B. Applicable Law

The sixth amendment guarantees not only assistance of counsel, but effective assistance of counsel. <u>Stickland v. Washington</u>, 466 U.S. 668, 686 (1984). In <u>Strickland</u> the Court held that:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was [so] deficient . . . that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed

> the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose results are
> reliable.  Strickland at 687.

"[T]he proper standard for attorney performance is that of reasonably effective assistance." Id.  The defendant has the burden of showing that his attorney's performance was not reasonably effective, under all the circumstances, considering the prevailing norms of the profession.  Strickland at 688. There is a strong presumption on review that counsel rendered adequate assistance, and the defendant is required to identify the specific acts or omissions where counsel failed to do so. Strickland at 690.  The reviewing court must determine whether errors of counsel caused the adversarial process to break down to the point of unreliability, thus affecting the defendant's due process rights.  Strickland at 696.  However the Court cautioned lower courts that if there is a lack of sufficient prejudice to the defendant due to the errors of counsel, the effectiveness claim may be disposed of on those grounds.  Id. at 697.

> (1) Trial Counsel's Failure to Request an Instruction on
>     Attempted Second Degree Murder

Petitioner first complains that his trial counsel failed to ask for an instruction on attempted second degree murder. This claim was summarily dismissed by the California supreme court.  Respondent's Answer to Order to Show Cause, Ex. G. Respondent correctly points out that under California law there is no offense of attempted second degree murder.  California's

11

supreme court has said that the use of the terminology "attempted second degree murder" is erroneous.  <u>People v. Montes</u>, 31 Cal. 4th 350, 353 fn.2 (2003).  In <u>People v. Bright</u>, 12 Cal. 4th 652, 656 (1996), the seminal California Supreme Court case on the issue, the court held that Penal Code section 664(a), which "impos[es] a greater punishment for an attempt to commit a murder that is 'willful, deliberate, and premeditated' does not create a greater degree of attempted murder but, rather, constitutes a penalty provision that prescribes an increase in punishment . . . for the offense of attempted murder." <u>Bright</u> at 656-57.  The Court then overruled <u>Bright</u> on other grounds in <u>People v. Seel</u>, 34 Cal. 4th 535 (2004), but reaffirmed its holding that attempt to commit a willful, deliberate, and premeditated murder is not a separate degree of attempted murder, but a penalty provision.  <u>Seal</u> at 541.

The court instructed the jury on attempted murder in accordance with the standard instruction, CALJIC No. 8.66 (5th ed. 1988), which reads in pertinent part:

> Every person who attempts to murder another human being is guilty of a violation of Sections 664 and 187 of the Penal Code.  [¶] Murder is the unlawful killing of a human being with malice aforethought. [¶] In order to prove such a crime, each of the following elements must be proved; [¶] 1.  A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing such act harbored express malice aforethought, namely a specific intent to kill unlawfully another human being.  [¶] In determining whether or not such an act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the criminal deed, on the other.

Clerk's Transcript (CT) 822-23.

12

At trial, when the court instructed the jury on attempt, it did so clearly, explaining that premeditation was a separate allegation:

> It is also alleged in Count 19 of the indictment that the crime attempted was willful, deliberate and premeditated murder.  If you find defendant guilty of attempt to commit murder, you must determine whether this allegation is true or not true.  Willful means intentional.  Deliberate means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.  Premeditated means considered beforehand.  If you find that attempt to commit murder was preceded and accompanied by a clear, deliberate intent to kill which was the result of deliberation and premeditation so that it must have been formed upon preexisting reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is attempt to commit willful, deliberate and premeditated murder.

Reporter's Transcript (RT) 2760-2761.  The court's instructions were in accordance with California law.  Petitioner's trial counsel was not deficient in not requesting an instruction on attempted second degree murder.  The state court's rejection of Petitioner's claim was not contrary to nor was it an unreasonable application of established federal law.  Accordingly, this claim for relief is denied.

(2) Failure to Request a Modified Accomplice Instruction

At trial, Jammie McLean, Respondent's accomplice, was called by the defense.  Petitioner faults his trial attorney for failing to request that the trial court give a modified accomplice instruction.

The California accomplice instruction admonishes that if an accomplice gives testimony that incriminates the defendant, it should be viewed with caution.  Petitioner contends that the accomplice instruction should have been modified so that only the

13

portion of McLean's testimony that supported the prosecution's case should be viewed with caution. Petitioner cites <u>People v. Williams</u>, 45 Cal. 3d 1268, 1314 (1988) for the proposition that when an accomplice is called as a witness by the defendant, a modified accomplice instruction, specifically CALJIC 3.18, should be given at the defendant's request. <u>Id</u>. at 1314. The <u>Williams</u> case provides, "When an accomplice is called as a witness by the prosecution, the court must instruct the jurors sua sponte to distrust his testimony. (Citations omitted.) When, by contrast, he is called by the defendant, the instruction should be given only at the defendant's request. (Citations omitted.) Finally, when he is called by both parties, the instruction should be tailored to relate only to his testimony on behalf of the prosecution." <u>Id</u>. at 1314.

Respondent correctly points out that the court did not instruct that an accomplice's testimony should be viewed with distrust at all. McLean was called as a witness by the defense, and Respondent and Petitioner agree that her testimony was that he had nothing to do with the acts in question, thus exculpating him. Therefore, counsel was not deficient by failing to request a modified accomplice instruction and did not prejudice his client. The state court rejection of Petitioner's claim was not contrary to or an unreasonable application of established federal law.

(3) Failure to Object to Voluntary Intoxication Instruction

Petitioner also calls his trial counsel ineffective for not objecting to the court's voluntary intoxication instruction. Petitioner did not raise this claim on direct appeal, and the state court denied the claim on habeas without citation or comment.

14

The trial court, on its own motion, instructed the jury, in pertinent part, as follows:

> However, there's an exception to this general rule, namely, where a specific intent is an essential element of the crime.  In such event, you should consider the defendant's voluntary intoxication in your determination of whether the defendant possessed the required specific intent at the time of the commission of the crime.
>
> RT 2731-2732.
>
> If the evidence shows that a defendant was intoxicated at the time of the alleged crime, you should consider that fact in determining whether or not such defendant has such specific intent.  If from all the evidence you have reasonable doubt whether the defendant had such specific intent, you must find that defendant did not have such specific intent.
>
> RT 2723.

Petitioner correctly cites California Penal Code section 22: "Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought." Petitioner contends that his trial counsel was ineffective in that he didn't object to the court failing to include the "premeditated, deliberated, or harbored express malice aforethought" language in the instruction.

The <u>Strickland</u> court made it clear that "[j]udicial scrutiny of counsel's performance [on an ineffectiveness of counsel claim] must be highly deferential.  [T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound strategy." <u>Strickland</u> at 680.  Here, Petitioner does not overcome the <u>Strickland</u> burden.  Petitioner's

15

defense at trial was "that he was elsewhere when the attack

occurred, and that he could not have carried Doe or performed other

acts described by her because of his physical disability."

Respondent's Answer to Order to Show Cause, Ex. D at 5-6.  The

voluntary intoxication instruction was given due to evidence that

co-defendant McLean was under the influence of drugs.  The evidence

showed that Petitioner tested negative for drugs or alcohol.  Thus

he was not entitled to a voluntary intoxication instruction at all,

much less a broader one.  Accordingly, this portion of Petitioner's

ineffectiveness of counsel claim is denied.

> (4)  Failure to Remind Trial Court of its Duty to Answer Juror
>      Questions

On September 30, 1998, the trial court conducted an inquiry

into a note sent by Juror 11.  All attorneys in the case were

present.  The judge read the note out loud; the note said, "I need

to see you, juror number 11."  Juror number 11 said:

> That's why I'm here.  I believe that my ability to be a
> juror is not working.  I'm having difficulty following
> the letter of the law as far as some of the counts are
> concerned.  I believe -- I hope I'm saying this
> properly, but I felt then because of that big problem
> that I'm having difficulty following the letter of the
> law.

RT 3050-14, lines 8-14.

After some reassurance from the trial judge, Juror 11 said:

> It comes -- the problem come with willful -- in some
> of the counts about being willful.  And they were
> just reading what the definition of willful was when
> you just came in, so I really didn't get the what
> the definition of willful was as far as willful and
> intentional.

RT 3050-15 lines 12-17.

Later, the court replied:

United States District Court
For the Northern District of California

> What I would prefer to have you do is you go back into the jury room and you convey to me by a note those portions of the instructions that you are finding difficult to follow or those that you may want to have further instruction on or some help because the court is very happy to do that.

RT 3050-15 lines 24-28 - 3050-16 line 1.

Hours later the jury returned its verdict.

Petitioner argues that at some point prior to the jury's verdict, his attorney should have reminded the court of its duty under the penal code to clear up any jury confusion on the law. See Cal. Penal Code §1138.

This claim was summarily denied by the state supreme court on Petition's petition for a writ of habeas corpus.

"[W]here . . . the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information." People v. Gonzales, 51 Cal. 3d 1179, 1213 (1990); superseded on other grounds by In re Steele, 32 Cal. 4th 682 (2004).

The record shows that the jury was just about to discuss "willful" when the judge inquired about juror 11's note. Petitioner has not shown that his counsel was in any way deficient or that his actions prejudiced the defense, as Strickland requires. The state court's rejection of Petitioner's claim was not contrary to or an unreasonable application of established Federal law.

(5) Failure to Investigate and Present Psychological Defenses

Petitioner argues that, if trial counsel had performed as required by the Sixth Amendment, he would have investigated Petitioner's claims of psychological problems. Trial counsel could

17

United States District Court
For the Northern District of California

have then used the findings of such investigation to prove that psychological problems prevented him from harboring malice aforethought, premeditating, or deliberating.  But a psychological defense to malice aforethought would have been inconsistent with Petitioner's alibi defense at trial.  Petitioner's claim for ineffective assistance of counsel is therefore denied.

(6) Ineffective Assistance of Appellate Counsel

Petitioner asserts that his appellate counsel rendered ineffective assistance by failing to contend on appeal that: (1) the trial court had a <u>sua</u> <u>sponte</u> duty to instruct on attempted second degree murder; (2) the trial court gave an erroneous instruction on voluntary intoxication; and (3) the trial court should have made further inquiries of juror number 11.

As stated above, <u>Strickland</u> requires a two prong test in determining whether a petitioner will prevail on an effective assistance of counsel claim.  Petitioner must show that his counsel was deficient.  <u>Strickland</u> at 687-91.  He must also show that he was prejudiced by his counsel's error.  <u>Strickland</u> at 694; <u>United States v. Moore,</u> 921 F.2d 207, 210 (9th Cir. 1990)(concluding there is no prejudice where counsel fails to raise a meritless claim).  For the reasons stated above, Petitioner's claims on these three issues are without merit.  He has failed to show that his counsel's representation was either deficient or prejudicial.  Petitioner's claim is therefore denied.

II.  Petitioner's Due Process Claims

A.    Background

Petitioner raises his due process claims based upon the trial

court's failure to instruct the jury on attempted second degree murder; its failure to instruct the jury that voluntary intoxication may have affected Petitioner's ability to premeditate or deliberate; and its failure to answer Juror 11's questions.

Because Petitioner raised his ineffectiveness of counsel claim for the first time on state habeas review, where it was summarily denied without citation or comment, the Court reviews this claim under the standard set forth in <u>Himes</u>.

### B. Applicable Law

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991).  To obtain habeas relief for errors in jury instructions, a petitioner must show that the ailing instructions so infected the entire trial that the resulting conviction violates due process.  <u>See</u> <u>id</u>. at 72; <u>see also</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973)).  The court must inquire whether there is a "reasonable likelihood" that the jury misapplied the challenged instruction in a way that violates the United States Constitution.  <u>Estelle</u>, 502 U.S. at 72 & n.4.

### C.   Analysis

(1) Instruction on Attempted Second Degree Murder

Petitioner asserts that the trial court had a duty to instruct

19

United States District Court
For the Northern District of California

on second degree murder.  But as discussed above, California doesn't recognize a crime of attempted second degree murder, so there is no <u>sua</u> <u>sponte</u> duty to instruct on it.

(2) Voluntary Intoxication Instruction

As discussed above, although the trial court did instruct on voluntary intoxication as relevant to co-defendant McLean, there was no evidence presented at trial that Petitioner was intoxicated. Furthermore, intoxication was inconsistent with Petitioner's defense at trial.  The lack of an instruction on voluntary intoxication was not an error "so infecting the trial that the resulting conviction violates due process." <u>Cupp</u>, 141 U.S. at 147.  The state court's rejection of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law.

(3) Failure to Answer Juror 11's Questions

Petitioner asserts that, by failing to ask Juror 11 if he or she had any further questions, the trial court violated Petitioner's due process rights.  But, as discussed above, there is no indication that Juror 11 had any additional concerns.  "The trial court was in a superior position to assess the juror's demeanor and determine [her] ability to continue deliberating." <u>Perez v. Marshall</u>, 119 F.3d 1422, 1427 (9th Cir. 1997).

The state court's rejection of Petitioner's due process claim was not contrary to nor an unreasonable application of clearly established federal law.  The petition on this claim is therefore denied.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas

20

corpus is DENIED as to all claims.  The Clerk of the Court shall
terminate all pending motions, enter judgment and close the file.
The parties shall bear their own costs.

IT IS SO ORDERED.

9/30/08



Dated _____

CLAUDIA WILKEN
United States District Court Judge

**United States District Court**
For the Northern District of California

21

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

MCDONALD,

        Plaintiff,

  v.

CAMPBELL et al,

        Defendant.

Case Number: CV05-01698 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 30, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jeffrey D'Wayne McDonald P05806
Mule Creek State Prison
P.O. Box 409040
Ione,  CA 95640

Linda Marie Murphy
Attorney at Law
455 Golden Gate Avenue
Suite 11000
San Francisco,  CA 94102

Dated: September 30, 2008

                            Richard W. Wieking, Clerk
                            By: Sheilah Cahill, Deputy Clerk

**United States District Court**
For the Northern District of California